# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>JESSICA CURELOP MILLER,<br><br>　　　　　　　　　　　Debtor<br>―――――――――――――――――――<br>JESSICA CURELOP MILLER,<br><br>　　　　　　　　　　　Plaintiff<br><br>v.<br><br>THOMAS M. GROSSO,<br><br>　　　　　　　　　　　Defendant | Chapter 7<br>Case No. 09-15324-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 09-1229 |

**MEMORANDUM OF DECISION**
**REGARDING CORE STATUS AND RELATED ISSUES**

　　　　The complaint in this proceeding asserts four counts for avoidance of fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).  When the complaint was filed, the bankruptcy court's authority to enter final judgment as to these counts was unquestioned.  With its opinion in *Stern v. Marshall*, ___U.S.___, 131 S.Ct. 2594 (2011), the Supreme Court placed that authority in question.  The Court therefore asked the parties to address several issues:  (i) whether the various counts in this adversary proceeding are or may be treated as core proceedings; (ii) whether, if they are core proceedings, the Supreme Court's decision in *Stern* nonetheless prohibits their assignment to a bankruptcy judge for final adjudication; and (iii) whether, if the counts are core but may not be assigned to a bankruptcy judge for final adjudication, they nonetheless consent to the bankruptcy judge's entering final judgment in the matter.

　　　　The procedural history is as follows.  The complaint in this adversary proceeding has been twice amended.  By her Second Amended Complaint ("the Complaint"), the plaintiff, Jessica Curelop Miller

("Miller") asserts, on behalf of her bankruptcy estate, eight counts for relief against the defendant, Thomas M. Grosso ("Grosso"):

- Count I, under 11 U.S.C. § 548(a)(1)(B), for avoidance of her dismissal of a state court civil action against Grosso as a fraudulent transfer;

- Count II, under 11 U.S.C. § 548(a)(1)(B), for avoidance of the transfer of certain real property as a fraudulent transfer;

- Count III, under 11 U.S.C. § 548(a)(1)(B), for avoidance of the transfer of the Purchase Funds as a fraudulent transfer;

- Count IV, under 11 U.S.C. § 548(a)(1)(B), for avoidance of a transfer of the Funds Transfer as a fraudulent transfer;

- Count V, for imposition of a constructive trust on Grosso's interest in the real property that is the subject of Count II;

- Count VI, under 11 U.S.C. § 542, for turnover of the real property;

- Count VII, under 11 U.S.C. §§ 550 and 551, for recovery and preservation for the estate of the assets whose transfer she succeeds in avoiding in Counts I through IV; and

- Count VIII, under 11 U.S.C. § 542, for turnover of the Gold Investment.

In the Complaint, Miller asserted that the adversary proceeding was in its entirety a core proceeding. In his answer to the Complaint, as in his answer to the earlier, first amended complaint, Grosso denied that the adversary proceeding is a core proceeding but expressly consented "to the entry of final orders or judgment by the bankruptcy judge in the event that it is ultimately determined that either this court or the District Court has jurisdiction over this matter."[1]  Neither party demanded a jury trial.

Later, after the Supreme Court decided *Stern v. Marshall,* the court asked the parties to address the issues enumerated in the first paragraph above.  In her response, Miller takes the following positions:

---

[1] Grosso had filed a motion to dismiss the adversary proceeding, arguing that under the the Rooker-Feldman doctrine, this court lacked subject-matter jurisdiction over the adversary proceeding.  The court denied that motion.

2

- that the turnover and fraudulent transfer counts are core;

- that notwithstanding *Stern*, the bankruptcy court may, as 28 U.S.C. § 157(b)(1) authorizes and without running afoul of *Stern*'s constitutional concern, hear and determine these matters and enter appropriate orders and judgment on them;

- that if the court determines that, in view of *Stern*, it may not determine and finally adjudicate one or more of the counts notwithstanding the parties' lack of consent, then the court may nonetheless determine and finally adjudicate these counts with the parties' consent;

    o that she consents to the bankruptcy judge entering final judgment this matter;

    o that the defendant should be deemed by his conduct to have consented to the bankruptcy judge's entering final judgment in this matter;

- that, if the court determines that it may not determine and finally adjudicate one or more of the counts without the parties' consent, and the defendant has not so consented, the bankruptcy court may and should, pursuant to 28 U.S.C § 157(c)(1), hear the matter and submit proposed findings of fact and conclusions of law thereon to the district court, with final judgment to be entered by the district court after reviewing *de novo* of any matter to which a party has timely and specifically objected;

- that when the bankruptcy court enters findings of facts, conclusions of law, and final judgment in this adversary proceeding, it should make clear that, if a reviewing court ultimately determines that the bankruptcy court did not have jurisdiction to enter final judgment over one or more counts, the bankruptcy court's findings of fact and conclusions of law may be treated as proposed findings and conclusions, subject entry of final judgment by the district court after review pursuant to 28 U.S.C § 157(c)(1); and

- that she does not intend to move for withdrawal of the reference as to this adversary proceeding and will oppose any motion by the defendant for the same.

Grosso does not answer Miller point for point but takes the following positions:

- that the Supreme Court's holdings in *Stern* and in *Granfinanciera, S.A. v. Nordberg*, 92 U.S. 33 (1989) together lead inexorably to the conclusion that the grant of authority in 28 U.S.C. § 157(b)(1) (authorizing bankruptcy judges to hear and determine core matters and enter appropriate orders and judgment on them) is unconstitutional as to fraudulent transfer claims, and therefore that the bankruptcy court may not enter final judgment as to those counts;

- that he does not consent to the bankruptcy judge's entering final judgment in this adversary proceeding;

- that, absent the express consent of the parties, this court is limited to entering proposed findings and conclusions under 28 U.S.C. § 157(c)(1);

- that he intends to move for the district court's withdrawal of the reference as to the adversary proceeding;

- that withdrawal of the reference is particularly appropriate as he asserts a right under *Granfinanceiera* to a jury trial with respect to the fraudulent transfer counts.

Grosso did not articulate a position on whether the various counts are core proceedings.

**Discussion**

The Court now makes the following rulings on the issues presented.

    **a.**    **Core Status**

With the exception of counts V (constructive trust) and VII (11 U.S.C. §§ 550 and 551), the counts in this adversary proceeding are proceedings for turnover of property of the estate and proceedings to determine, avoid, and recover fraudulent conveyances. Both are defined by statute to be core proceedings. 28 U.S.C. § 157(b)(2)(E) and (H) ("Core proceedings include . . . orders to turn over property of the estate . . . [and] proceedings to determine, avoid, and recover fraudulent

4

conveyances."). Though *Stern* gives cause to question the constitutionality of 28 U.S.C. § 157(b)(1) (authorizing bankruptcy judges to hear and determine core matters and enter appropriate orders and judgment on them) as to those core matters that are fraudulent conveyance claims, it gives no cause to question their status as core.[2] Accordingly, these counts are within the court's core jurisdiction.

The amended complaint also articulates and separately enumerates two further counts: Count V, for imposition of a constructive trust on the real property that is the subject of one of the fraudulent transfer counts, and Count VII, for (i) recovery under 11 U.S.C. § 550 of the property (or the value thereof) that is the subject of the fraudulent transfer counts and (ii) preservation under 11 U.S.C. § 551 of the avoided transfers for the benefit of the bankruptcy estate. Miller explains that the count for imposition of a constructive trust is merely remedial and dependent wholly on her ability to avoid the transfer of the property at issue as a fraudulent transfer. Likewise, she explains that her rights under 11 U.S.C. §§ 550 and 551 are entirely derivative of her rights of recovery under the fraudulent transfer counts. The court agrees that rights under §§ 550 and 551 are derivative of rights of recovery under fraudulent transfer counts and wholly remedial and should therefore be construed as simply part of her fraudulent transfer counts. Count VII therefore requires no separate determination of its core status.

A count for imposition of a constructive trust, on the other hand, is not generally an extension of another count. Under Massachusetts law, which governs here, it is a basis for recovery in its own right—remedial to be sure, but no less so than any cause of action.[3] For two reasons, the court cannot

---

[2] I add one proviso. If it is later determined that a fraudulent transfer count, or any matter statutorily designated as core, may not constitutionally be treated as a core proceeding—that is, assigned to a bankruptcy judge for final adjudication without the consent of the parties—then I would hold that the matter is effectively not core at all but noncore within the meaning of 28 U.S.C. § 157. This is consistent with the legislative intent behind 28 U.S.C. § 157, which was to define core proceeding "close to or congruent with constitutional limits." *Arnold Print Works v. Apkin (In re Arnold Print Works)*, 815 F.2d 165, 169 (1st Cir. 1987). In essence, a ruling that a particular category of statutorily-designated core proceedings, such as the counterclaims identified in 28 U.S.C. § 157(b)(2)(C) that were at issue in *Stern*, may not constitutionally be assigned to a bankruptcy judge for final adjudication is a ruling that the designation is ineffective as to that category of proceedings. The statutory designation of a particular kind of proceeding as core is nothing but an assignment of such proceedings to a bankruptcy judge for final adjudication.

[3] See *Fortin v. Roman Catholic Bishop of Worcester*, 416 Mass. 781, 788 (1994) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property

accept Miller's characterization of this count as remedial or an extension of her fraudulent transfer counts. First, in view of 11 U.S.C. §§ 550 and 551, she needs no further remedy for her fraudulent transfer counts. Under § 550(a), one who succeeds in avoiding a transfer under 11 U.S.C. § 548 may recover "the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). And under § 551, the avoided transfer "is preserved for the benefit of the estate." 11 U.S.C. § 551. It is hard to see what further benefit the imposition of a trust would confer. Second, as pleaded in Count V of her complaint, this count hits upon all the touchstones of a Massachusetts claim for imposition of a constructive trust: title was "wrongfully obtained" and is being "wrongfully held," warranting "equitable prevention of the unjust enrichment of Grosso at the expense of Ms. Miller." For these reasons, I view Count V as a separate count, requiring independent analysis of its core status.

The term "core proceeding" is used in 28 U.S.C. § 157(b) to refer to those matters a bankruptcy judge may hear, determine, and dispose of by appropriate orders and judgments, subject only to appellate review. Subsection 157(b) provides a non-exhaustive list of core proceedings, including two catch-all categories: "matters concerning the administration of the estate," § 157(b)(2)(A), and "other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship," § 157(b)(2)(O). Section 157 does not otherwise define "core proceeding" except by dictating that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). "It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here." *In re Arnold Print Works*, 815 F.2d at 169. The legislative history of 28 U.S.C. § 157

---

through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched."); *Barry v. Covich*, 332 Mass. 338, 342 (1955) (constructive trust is "a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information. It is difficult to define the exact scope of this remedy."). See also *In re Pina*, 363 B. R. 314, 323-24 (Bankr. D. Mass. 2007) and cases cited.

indicates that "Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits." *Id*. at 168-69.

As a count for unjust enrichment that existed before Miller filed her bankruptcy petition, Count V is merely one to liquidate a prepetition asset, the asset being an equitable right of action. It did not arise under the Bankruptcy Code or in the administration of the bankruptcy case and, though it may affect the size of the estate, has no direct role in the adjustment of debtor-creditor relationships.[4] For these reasons, it is not core in nature.

### b.     Consent as to Noncore Count and Authority under 28 U.S.C. § 157(c)(2)

Count V is not a core proceeding but is otherwise related to Miller's bankruptcy case. The bankruptcy court's authority over matters that are not core proceedings but that are otherwise related to a bankruptcy case is defined in 28 U.S.C. § 157(c). Without the consent of the parties, a bankruptcy judge may not determine such matters and enter final orders or judgments. *Id*. Still, a bankruptcy judge may hear these non-core matters and, when he or she does so, "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). With consent, however, the bankruptcy judge's authority is broader. Notwithstanding § 157(c)(1), a bankruptcy judge may hear and determine and enter appropriate orders and judgment in these matters "with the consent of all the parties to the proceeding." 28 U.S.C. § 157(c)(2).

In the two answers he filed in this adversary proceeding, and despite his position that the adversary proceeding as a whole was not a core proceeding, Grosso expressly consented to entry of final orders or judgment by the bankruptcy court. As to non-core counts, he remains bound by those

---

[4] Grosso is not a creditor of Miller and has filed no proof of claim in this case.

7

expressions of consent. In his response to the court's latest order, he states that he does not consent to entry of final judgment by this court. The court had indeed solicited the parties' positions as to whether they consent, but that order was directed to problems arising from *Stern*. *Stern* did not involve non-core matters but proceedings in which a bankruptcy judge lacked authority to enter final judgment *notwithstanding that the proceeding was core*. Grosso's present indication of lack of consent therefore affects only those *core matters* that *Stern* has put in issue. It cannot alter his previously expressed consent as to the non-core count. Both parties having consented to entry of final judgment on the non-core count, the bankruptcy court may under § 157(c)(2) determine and enter final judgment on that count.

### c. Consent as to Core Count

As a general rule, a parties' consent is irrelevant to the authority of a bankruptcy judge to enter final judgment in a core proceeding. Nowhere in § 157(b) is consent made a condition of the court's authority. 28 U.S.C. § 157(b). However, with *Stern*, it is now possible to have a proceeding that is defined by statute as core but as to which a bankruptcy judge may not, at least without the parties' consent, enter final judgment. The question arises whether, as under § 157(c), the parties' consent would make a difference. I need not address that issue here because it is clear that Grosso does not consent to the bankruptcy judge's entry of final judgment as to core counts for which authority to enter final judgment may be lacking.[5]

Miller argues that, by virtue of his conduct, Grosso should be deemed to have so consented. I do not know when, or whether, a litigant's conduct may supply the necessary consent, but I am certain that Grosso's conduct has not supplied it here. The consent in question concerns the counts that are

---

[5] Even if those counts could now effectively be treated as non-core for purposes of § 157(c), Grosso cannot have known of or anticipated that treatment when he initially consented to entry of final judgment as to non-core counts. His previous consent should therefore not bind him as to the fraudulent transfer counts.

8

core, and the relevance of that consent arose only with the decision of *Stern* on June 23, 2011. The court did not request Grosso's position on the issue until November 22, 2011. Miller cites no conduct after even the earlier of those dates. And to the extent that earlier conduct may matter, it has indicated nothing more clearly than that he would rather not be here.

### d. Authority to Hear Fraudulent Transfer Counts

If a bankruptcy court may not enter final judgment in a proceeding to avoid or recover a fraudulent transfer, it may nonetheless hear the matter and enter proposed findings and conclusions, subject to review and entry of final judgment in the district court, essentially as a noncore matter that falls within the scope of 28 U.S.C. § 157(c)(1).[6] *In re Refco Inc.*, 461 B.R. 181, 192-94 (S.D.N.Y. 2011) and cases cited (finding the bankruptcy court could still submit proposed findings of fact and conclusions of law to the district court, even though 28 U.S.C. § 157 does not specifically contemplate such a procedure for "core" proceedings and commenting, "[s]uch a result clearly comports with the directive that when addressing the consequences of holding a statute unconstitutional courts must impose a remedy that best corresponds to what Congress would have intended if it had known about such holding"); *Field v. Lindell (In re The Mortgage Store, Inc.)*, 464 B.R. 421, 426-28 (D.Haw. 2011); *Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, 464 B.R. 770, 773-775 (N.D.Ill. 2011); *Adelphia Recovery Trust v. FLP Group, Inc.*, 2012 WL 264180, *6-7 (S.D.N.Y. 2012); *In re Coudert Bros. LLP*, 2011 WL 5593147, *13-15 (S.D.N.Y. 2011); *In re Extended Stay, Inc.*, 2011 U.S. Dist. LEXIS 131349 *28, 36 (S.D.N.Y. 2011) ("In the event that the bankruptcy court does not have constitutional authority to enter a final judgment on certain claims, it may submit proposed findings of fact and conclusions of law to this Court."); but see *Samson v. Blixseth (In re Blixseth)*, 2011 WL 3274042, at *12 (Bankr. D. Mt. 2011). By the same token, when a

---

[6] Though Grosso does not consent to entry of final judgment by the bankruptcy court, he agrees that the bankruptcy court may hear the fraudulent transfer counts and enter proposed findings and conclusions pursuant to 28 U.S.C. § 157(c)(1).

9

bankruptcy court enters final judgment in a core matter that on appeal is later determined on *Stern* grounds to have been outside its authority, the reviewing court on appeal may treat the bankruptcy court's findings and conclusions as proposed findings and conclusions under § 157(c)(1) and subject to review by the district court as prescribed therein. *In re Coudert Bros. LLP*, 2011 WL 5593147, at *13-14.

In view of these options, the Court need not at this juncture decide the issue of its authority to enter final judgment on the fraudulent transfer counts.[7] The Court will proceed to try this adversary proceeding and will decide its authority to enter final judgment in conjunction when it prepares its findings and conclusions. If I conclude that a bankruptcy judge lacks authority to enter final judgment, I will enter proposed findings and conclusions under § 157(c)(1). If I conclude that a bankruptcy judge is authorized to enter final judgment, I will enter findings and conclusions and final judgment but add that that if a reviewing court ultimately determines that the bankruptcy court did not have authority to enter final judgment over one or more counts, the bankruptcy court's findings of fact and conclusions of law may be treated as proposed findings and conclusions, subject entry of final judgment by the district court after review pursuant to 28 U.S.C § 157(c)(1).

Date: March 30, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[7] Grosso has indicated that he intends to move to withdraw the reference. If the reference is withdrawn and the matter tried in the district court, the issue of authority will be moot.